IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERACTIVE BROKERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 08-CV-6813 |
| | ) | |
| MICHAEL DURAN, ET AL., | ) | District Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Interactive Brokers, LLC has moved for an order preliminarily enjoining Defendants from proceeding with three arbitration proceedings initiated against Interactive in Dallas and Houston, Texas, and Madison, Wisconsin. For the following reasons, the Court grants Plaintiff's motion for preliminary injunction [8].

**I.  Background**

Interactive, an online brokerage firm, brings this action for declaratory and injunctive relief against three groups of investors who claim to have been defrauded by one of Interactive's customers, Enterprise Trust Company.[1] Count I seeks a declaration of Interactive's rights and obligations with respect to Defendants. In Count II, Interactive asks the Court to preliminarily and permanently restrain Defendants from pursuing claims against Interactive in arbitration proceedings before the Financial Industry Regulatory Authority ("FINRA").[2]

---

[1] Plaintiff's complaint identifies the three groups of Defendants as the "Dallas Defendants," the "Houston Defendants," and the "Madison Defendants," based upon the city in which each group has asked its arbitration hearing to be convened.

[2] FINRA is the primary regulator of broker dealers in the United States. Interactive is a FINRA member, and, pursuant to its membership with FINRA, Interactive agreed to arbitrate disputes with its customers.

In March 2008, the Securities and Exchange Commission sued Enterprise and its principals, John Lohmeier and Rebecca Townsend, for securities fraud and forced the company into receivership.[3] To recover their alleged losses, Defendants asserted claims against Enterprise in the receivership proceeding. In the FINRA arbitrations, Defendants have alleged that they entrusted certain investment assets to Enterprise, which Enterprise commingled with the assets of other customers and used to fund speculative margin trading that was neither authorized by nor intended to benefit Defendants. Defendants assert claims against Lohmeier, Townsend, and four brokerage firms, including Interactive, that transacted business with Enterprise. Defendants allege that Lohmeier and Townsend are liable as the primary architects of Enterprise's fraud, and that the four broker-dealers are secondarily liable as aiders and abettors. For example, Defendants allege that Interactive is responsible for Defendants' investment losses because Interactive negligently or recklessly failed to detect, prevent, and report Enterprise's fraud. Defendants also allege that Interactive and the other brokers violated state Blue Sky laws.

As submitted by Interactive and not rebutted by Defendants, Interactive is a "discount" online brokerage firm that does not give trading advice or make recommendations and that does not manage or otherwise exercise discretion over customer accounts. In the months prior to its termination, Enterprise opened two trading accounts at Interactive, only one of which was used. Both accounts were in Enterprise's name, not in the name of any Defendant. Interactive executed online trades selected by Enterprise and carried the resulting positions in an online account in the name of Enterprise. None of the Defendants has ever opened, maintained,

---

[3] Defendants' contentions that the Receiver and the SEC have described "misconduct" by Interactive, acting in concert with Enterprise, are puzzling, because Defendants provide no citations to support their assertions. Interactive responds, and the Court's own review confirms, that the SEC complaint filed *against Enterprise* and its principals does not (i) name Interactive as a defendant, (ii) contain any allegations of wrongdoing by Interactive, or (iii) allege that Interactive knew of any wrongdoing by Enterprise. Nor does it appear from anything in the record that the Receiver has identified any allegations of wrongdoing by Interactive.

controlled, or traded in an account at Interactive or entered into an account or customer agreement with Interactive.

## II. Analysis

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Whether a party has consented to arbitration has long been recognized to be a question of law, to be decided by the court, not the arbitrator, "[u]nless the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 649 (1986); see also *Geneva Securities, Inc. v. Johnson*, 138 F.3d 688, 691 (7th Cir. 1998); *Sphere Drake Ins. Ltd. v. All American Ins. Co.*, 256 F.3d 587, 589-90 (7th Cir. 2001) ("courts, rather than arbitrators, usually determine whether the parties have agreed to arbitrate"). In determining whether the parties have agreed to arbitrate, "courts generally * * * should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Defendants concede that they did not have arbitration agreements with Interactive. Instead, Defendants contend that they are third party beneficiaries of an arbitration agreement between Enterprise and Interactive and have a right to compel arbitration on that basis.

### A. Preliminary injunction standard

Like all forms of injunctive relief, a preliminary injunction is "an extraordinary remedy that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). In the Seventh Circuit, a court must consider the following factors in deciding whether to grant a preliminary injunction: (i) the absence of an adequate remedy at law, (ii) the presence of

irreparable harm to the moving party, (iii) the balance of the harms between the parties, (iv) the prospect of some likelihood of success on the merits of the claim, and (v) the public interest. *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386-88 (7th Cir. 1984). The first two factors must be considered at the threshold, for when the moving party has no likelihood of success on the merits or cannot make any showing of irreparable harm, a motion for preliminary injunction ordinarily will be denied on that ground alone. See *Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.*, 255 F.3d 460, 463 (7th Cir. 2001); *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992). Under the "sliding scale" approach employed in this circuit, "the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." See, *e.g.*, *Ty, Inc. v. The Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001). "The sliding scale approach is not mathematical in nature; rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id*. at 895-96.

### 1. Likelihood of success on the merits

FINRA Rule 12200 provides, in relevant part, that a member firm must arbitrate a dispute if the "dispute is between a member and a customer," the dispute "arises in connection with the business activities of the member," and arbitration "is * * * requested by the customer." As set forth above, Defendants claim to be third party beneficiaries of the arbitration agreement between Interactive and Enterprise and assert that "under the well established [principle] of equitable estoppel, Interactive should be required to arbitrate the dispute with them * * *." Def. Resp. at 6.

The parties have not presented the Court with any Seventh Circuit decisions on point, nor has the Court discovered any in its own research. However, the Second Circuit's decision in

4

*Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003), is highly instructive. In *Bensadoun*, eight investors filed an NASD arbitration against Jean Bensadoun, a stockbroker associated with PaineWebber, an NASD member firm. The investors alleged that they transferred investment funds to PaineWebber expecting that a third party, Michael Autard, would invest the proceeds in a combination of stocks and bonds. Instead, Autard and Bensadoun arranged for the money to be deposited into a commingled account controlled by Autard. When the account eventually was closed, the investors learned of Autard's fraud and brought an arbitration proceeding against Bensadoun, presumably because Autard was a foreign national who was not registered with the NASD. Bensadoun responded by suing to enjoin the arbitration, alleging that the investors were not his customers and could not compel him to arbitrate. The Second Circuit held that the district court had erred in disregarding Bensadoun's argument that the investors were not his customers, but rather Autard's. The court noted that if the investors believed they were entrusting their funds to Autard, then they were his customers, not Bensadoun's, and had no right to force Bensadoun into arbitration. Any other result would mean that "every purchaser of shares in a mutual fund and every beneficiary of a pension fund would arguably be 'customers' of every investment institution with which those funds did business, and would be entitled to demand arbitration * * *." *Id*. at 177. The court added that, where investors deposit their funds with a third party, who then deals with an unaffiliated broker-dealer, "that third party, not the investors, will normally be the broker's customer." *Id*. at 178.

Here, Defendants entrusted their assets to Enterprise, not Interactive. Defendants had no contact with Interactive and do not allege that Enterprise or Interactive held Enterprise out as Interactive's agent. As Interactive notes, the cases cited by Defendants do not support the proposition that a party to a bilateral arbitration agreement can be compelled to arbitrate claims

5

brought by a large group of individuals whose existence, number, and identity were unknown at the time the agreement was formed, merely because those persons claim to have had some relationship with the other party to the agreement and contend that the parties to the agreement acted in concert. Reply at 1. Defendants do not even allege that they knew of Interactive or understood that Enterprise maintained an account there. Both accounts were in Enterprise's name, not the name of any Defendant. None of the Defendants ever has opened, maintained, controlled, or traded in an account at Interactive or entered into an account or customer agreement with Interactive. Under these circumstances, treating Defendants as Interactive's "customers" would stretch the word "customer" beyond its meaning. See, *e.g.*, *Brookstreet Securities Corp. v. Bristol Air Inc.*, 2002 U.S. Dist. LEXIS 16784 (N.D. Cal. Aug. 5, 2002) (Westlaw citation not available) (explaining that a customer relationship typically is created between a member firm and a third party when "the individual who solicited the investments or provided investment advice to the purported 'customers' was a representative or employee of the broker").

As the cases cited by Defendants recognize, a party may in some instances avail itself of an arbitration agreement to which it is not a signatory if that party is an intended beneficiary of the agreement. See *Championsworld, LLC v. United States Soccer Federation*, 487 F. Supp. 2d 980, 987-88 (N.D. Ill. 2007) (citing *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524 (7th Cir. 1996)). Defendants contend that the decision in *Championsworld*, in which members of a non-signatory class were able to force the resisting party to arbitrate, compels a similar result here. In that case, a defunct promoter of international soccer matches sued the United States Soccer Federation ("USSF") and Major League Soccer ("MLS") for conspiring to prevent the promoter from reaping the benefits of "match agreements" it had executed with USSF. USSF moved to

compel arbitration on the grounds that, to secure a "match agent" license from soccer's international governing body ("FIFA"), the promoter had agreed to submit all disputes to arbitration with national soccer associations. The promoter objected on the ground that USSF was not a party to its match agent license with FIFA and therefore could not compel arbitration. The district court found that because USSF was a national association, it was an intended third party beneficiary of the promotor's license agreement with FIFA and thus could compel the promoter to arbitrate.

Unlike the situation in *Championsworld*, Defendants here have not presented any evidence that Interactive or Enterprise intended Defendants to be able to avail themselves of the arbitration forum provided under either the Arbitration Agreement or the Customer Agreement. By its terms, the Arbitration Agreement extends only to "controvers[ies] or claim[s]" between Interactive and "the undersigned Customer" (*i.e.*, Enterprise). The arbitration provision in the Customer Agreement is somewhat broader, extending to "Customer" as well as ("if applicable") six categories of related persons: "Customer's shareholders, officers, directors, employees, associates or agents." However, "customers of a customer," which describes Defendants relationship to Enterprise, are not included under either agreement.

In other cases cited by Defendants, courts have held that a plaintiff may be estopped from denying that his arbitration agreement extends to non-signatory defendants whose conduct was substantially intertwined with that of a signatory to the arbitration agreement. See *Johnston v. Arrow Fin. Servs.*, LLC, 2006 WL 2710663 (N.D. Ill. Sept. 15, 2006); *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995 (N.D. Ill. 2001). In *Johnston v. Arrow Financial Services, LLC*, a case on which Defendants rely, plaintiffs who were signatories to an arbitration agreement brought suit against a party with whom plaintiffs claimed to have interacted directly

as agent of the other signatory. Plaintiffs alleged in a federal lawsuit that the counter-party to their arbitration agreement, a credit card issuer, had acted in concert with Arrow Financial in transmitting debt collection letters that plaintiffs alleged violated the Fair Debt Collection Practices Act. Instead of naming the issuer as a defendant, plaintiffs opted to bring suit only against Arrow. The court found that plaintiffs could not avoid arbitration by suing Arrow instead of the issuer, given that their claims were "based on the conduct of a signatory to the arbitration agreement." *Id*. at *13-*15; see also *Hoffman*, 143 F. Supp. 2d at 1003 (ordering plaintiffs to arbitrate because allowing plaintiffs to rely on purchase-sale contracts that they alleged were fraudulently induced, while skirting the arbitration provisions in those contracts, would be inequitable).

In *Johnston* and *Hoffman*, the principle of equitable estoppel operated as a shield, not a sword. It protected persons and entities that, although not technically signatories to the contract containing the arbitration provision, had been hailed into court by a party with whom they dealt directly regarding the subject matter of the contract and who agreed to have disputes arising under that contract arbitrated rather than litigated. Here, Defendants did not have a contract, or an agreement to arbitrate, with Interactive. Furthermore, while Defendants had a relationship with Enterprise and Enterprise had a relationship with Interactive, there is nothing in the current record to indicate that Interactive had any knowledge of – let alone dealings with – any of the Defendants, or that Interactive knew or had reason to know that Enterprise was acting as Defendants' agent.

The remaining question before the Court is whether Defendants nevertheless are within the class of non-signatories who, under FINRA and relevant case law, may compel arbitration. In other words, is the term "customer" under the meaning of FINRA Rule 12200 sufficiently

broad to encompass Defendants in this case? The Court concludes that even construing the term "customer" broadly, Defendants do not qualify as "customers" under Rule 12200 by virtue of being "customers of a customer." See also *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund*, 2008 WL 4891229, at *3-5 (S.D.N.Y. Nov. 12, 2008). To hold differently would enable non-signatories (like Defendants here) to bind a signatory (like Interactive) to an arbitration agreement more expansive – one that would apply not only to customers, but to customer's customers – than the one that it actually signed. And such a result would contravene the core principle, recently reaffirmed by the Second Circuit, that "an obligation to arbitrate can be based only on consent." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358 (2d Cir. 2008).

Finally, Defendants have not cited any cases in which equitable estoppel was applied against a party that initiated litigation only after having first been named in an arbitration complaint that does not relate to the contract containing the arbitration clause. *Cf. Johnston*, 2006 WL 2710663, at *13-*15 (conduct of non-signatory defendants was substantially intertwined with that of the other signatory to the arbitration agreement). Here, Defendants, without alleging that they signed an arbitration agreement with anyone, instituted arbitration proceedings against an entity with whom they had no contact whatsoever, much less dealings relating to the subject matter of their claim. Again, because "an obligation to arbitrate can be based only on consent," "[i]t is only by making a commitment to arbitrate that one gives up the right of access to a court of law." *Sokol Holdings*, 542 F.3d at 358.

For all of the reasons stated above, the Court concludes that Interactive has a strong likelihood of success on the merits of its declaratory and injunctive claims. Defendants simply have not come forward with any basis from which to conclude that (i) in its dealings with

Interactive, Enterprise disclosed that it was acting as an agent of Defendants (rather than simply acting on its own behalf); (ii) Defendants were intended third-party beneficiaries of the arbitration agreement between Interactive and Enterprise; (iii) Defendants may assert equitable estoppel against Interactive based on its consent to arbitrate a certain class of disputes as defined in its agreement with Enterprise; or (iv) Defendants, as customers of Interactive's customer, may compel arbitration under the FINRA rules.[4]

### 2. Adequate Remedy and Irreparable Harm

Several courts have held that "forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes *per se* irreparable harm." See *Chicago School Reform Board of Trustees v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 996 (N.D. Ill. 1999); see also *McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir. 1997); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990); *Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union, Local 365*, 975 F. Supp. 445, 447 (S.D.N.Y. 1997). The Court agrees with the reasoning of those courts. Although the Supreme Court has made it clear that arbitration, in the proper circumstances, is a favored form of dispute resolution, it also has made clear that a party cannot be forced to arbitrate issues that it did not agree to arbitrate. See, *e.g.*, *AT & T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 649 (1986). Forcing a party to arbitrate a matter that the party never agreed to arbitrate, regardless of the final result through arbitration or judicial review, unalterably deprives the party of its right to select the forum in which it wishes to resolve disputes. See *Sokol Holdings*, 542 F.3d at 358. Thus, the Court finds that Interactive has demonstrated that it will suffer irreparable harm if an injunction is not

---

[4] In opining on the likelihood of success on the "merits," the Court stresses that it is addressing only the "merits" of Plaintiff's claims seeking to halt the arbitrations. In other words, this decision expresses a preliminary view only on the forum issue – arbitration versus court – and offers no opinion on the merits of any claims that Defendants may have against Interactive relating to Defendants' investments with Enterprise (see generally Defs. Supp. Op. at 4).

entered. See also *Ryan Beck & Co., Inc. v. Campell*, 2002 WL 31696792, at *6 (N.D. Ill. Dec. 2, 2002).

### 3. Balancing of Harms

The harm that Defendants would suffer if the Court issues an erroneous preliminary injunction would be a delay in the arbitration proceedings while this Court determines whether Interactive can be forced to arbitrate. If the Court ultimately rules in favor of Defendants on Count II of Interactive's complaint, Defendants could proceed with their arbitrations at that time. On the other hand, and in light of Interactive's likelihood of success on the merits, the harm that Interactive would suffer if the injunction were erroneously denied would be irreparable, as Interactive would have been compelled to arbitrate a dispute that it did not agree to arbitrate. *Id*. Given that a preliminary injunction simply will delay the arbitration in its early stages until this Court conclusively decides the underlying issues, the balance of hardships tips in Interactive's favor.

### 4. Public Interest

While public interest "generally favors arbitration, this policy is based on the presumption that the subject of the arbitration is one that the parties actually agree to arbitrate." *Chicago School Reform Board of Trustees.*, 40 F. Supp. 2d at 996-97. In this instance, the public interest will be served because a preliminary injunction will minimize the risk that the parties will suffer the inconvenience, cost, and delay associated with a protracted arbitration only to have any resulting award vacated for want of jurisdiction.

### III. Conclusion

For the reasons set forth, the Court grants Interactive's motion for preliminary injunction [8] and preliminarily enjoins Defendants from proceeding with the arbitration proceedings initiated against Interactive in Dallas, Texas, Houston, Texas, and Madison, Wisconsin.

Dated: February 17, 2009

_____
Robert M. Dow, Jr.
United States District Judge